PONDER, Judge.
Plaintiff appealed the dismissal of his suit for uninsured motorist benefits.
The sole issue is the effective date of cancellation of an insurance binder.
We affirm.
On May 9, 1979, plaintiff, then a resident of Florida, applied through the Bruner’s Insurance Agency in Florida for uninsured motorist coverage with Southeastern Fidelity Insurance Company. Bruner’s bound coverage for plaintiff until it was notified of rejection by Southeastern Fidelity Insurance Company on May 21, 1979. In the meantime, plaintiff left Florida to attend LSU in Baton Rouge without leaving a forwarding address. As a result, Bruner’s correspondence to plaintiff was delayed. After attempting to notify plaintiff of the rejection and receiving no response, Bruner’s tried to get coverage with Eastern Insurance Company. Not having an application for Eastern, Bruner’s filed an application on another company’s form and mailed it to Eastern’s broker, Jack West & Associates, Inc., on May 25, 1979, binding coverage from that date. On June 5, 1979, plaintiff wrote to Bruner’s requesting that his policy be cancelled “at this time”. On the same date, Jack West & Associates wrote Bruner’s requesting plaintiff complete an Eastern application form. When no application was forthcoming, Jack West & Associates sent a notice of cancellation of the binder to plaintiff on June 22 effective as of July 5. Bruner’s then noti *359 fied Jack West & Associates of plaintiff’s letter of cancellation and Jack West & Associates “flat cancelled” the binder.[1]
Plaintiff was injured June 12,1979 by the negligence of an uninsured motorist.
Accepting June 5, 1979, as the date of cancellation, the trial court dismissed plaintiff’s suit against defendant Eastern.
Plaintiff argues the cancellation of Eastern’s binder was not effective until July 5, 1979. He contends the only written documentary evidence of the cancellation of his binder is the notice given a July 5 effective date. He attempts to explain that he thought he would have a 30 day grace period after his own written request for cancellation, “at this time” dated June 5, 1979.
He further contends the June 22, 1979 notice was responsive to plaintiff’s letter of cancellation. We find no error in the court’s acceptance of defendant broker’s testimony that the June 22, 1979 notice of cancellation was based upon plaintiff’s failure to submit a proper application. Only after Jack West & Associates received notice from Bruner’s of plaintiff’s June 5, 1979 request for cancellation did it “flat cancel” the binder.
We agree with the trial court that plaintiff’s written request complies with the cancellation provision of Eastern’s policy.[2] Mouchon v. Palmer, 265 So.2d 429 (Florida App. 4th Dist. 1972).
Plaintiff next contends the request for cancellation cannot be interpreted to ask cancellation retroactively to May 29, 1979. Defendant testified that because plaintiff had not submitted a proper application the binder was cancelled as if it had never been issued and plaintiff refunded his full premium. At the least, plaintiff’s letter indicates an intention for his policy to be cancelled as of June 5, 1979, seven days prior to his accident.
Plaintiff last contends his original application prohibits “flat cancellations”. This application was rejected by Southeastern approximately three weeks before plaintiff requested cancellation of his insurance coverage. The only coverage in effect at the time of plaintiff’s request was a binder issued by Jack West & Associates, Inc. for Eastern Insurance Company. There is no evidence Eastern prohibited “flat cancellations”. Jack West testified that the usual company procedure was to cancel a policy upon an insured’s request the day after the postmark. In this case, as no proper application had been received before the request for cancellation, Jack West & Associates cancelled the binder retroactive to its issuance and returned all of plaintiff’s money.
Plaintiff’s reliance on LSA-R.S. 22:636 [3] and the jurisprudence thereunder is *360 misplaced. In the first place, the statute would be inapplicable to an insurance policy issued in Florida to a Florida resident. Furthermore, the statute addresses itself to cancellation of a policy by the insurance company. The cancellation here was on plaintiff’s own initiative.
For the above reasons, the judgment of the trial court is affirmed at appellant’s costs.
AFFIRMED.

. The term “flat cancelled” means the binder is cancelled as if never issued and all the premium is refunded.

. “CONDITIONS
10. Cancellation: This policy may be can-celled by the named insured by surrender thereof to the company or any of its authorized agents or by mailing to the company written notice stating when thereafter the cancellation shall be effective.”

. LSA-R.S. 22:636:
“A. Cancellation by the insurer of any policy which by its terms is cancellable at the option of the insurer, or of any binder based on such policy, may be effected as to any interest only upon compliance with either or both of the following:
(1) Written notice of such cancellation must be actually delivered or mailed to the insured or to his representative in charge of the subject of the insurance not less than five days prior to the effective date of the cancellation.
(2) Like notice must also be so delivered or mailed to each mortgagee, pledgee, or other known person shown by the policy to have an interest in any loss which may occur thereunder.
B. The mailing of any such notice shall be effected by depositing it in a sealed envelope, directed to the addressee at his last address as known to the insurer or as shown by the insurer’s records, with proper prepaid postage affixed, in a letter depository of the United States Post Office. The insurer shall retain in its records any such item so mailed, together with its envelope, which was returned by the Post Office upon failure to find, or deliver the mailing to the addressee.
C. The affidavit of the individual making or supervising such a mailing, shall constitute pri-ma facie evidence of such facts of the mailing as are therein affirmed.
*360 D. The portion of any premium paid to the insurer on account of the policy, unearned because of the cancellation and in amount as computed on the pro rata basis, must be actually paid to the insured or other person entitled thereto as shown by the policy or by any endorsement thereon, or be mailed to the insured or such person as soon as practicable following such cancellation. Any such payment may be made l?y cash, or by check, bank draft, or money order.
E. This Section shall not apply to temporary life insurance binders nor to contracts of life or health and accident insurance which do not contain a provision for cancellation prior to the date to which premiums have been paid, not to the contracts provided in Part XV of this Chapter.”